# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**May 14, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* E.W.

No. 17-1079 (Webster County 16-JA-81)

## MEMORANDUM DECISION

Petitioner Father T.W., by counsel Andrew B. Chattin, appeals the Circuit Court of Webster County's November 8, 2017, order terminating his parental rights to E.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the child, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights when he substantially complied with the terms and conditions of his improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2016, the DHHR filed an abuse and neglect petition against petitioner. At the time the petition was filed, petitioner was dating and living with S.L., the mother of H.L., F.L., and P.L. Petitioner's child, E.W., the only child at issue in this appeal, lived with her paternal grandparents the majority of the time. The DHHR alleged that it had initiated an investigation into allegations that H.L. sexually assaulted his sister, P.L. During an interview, F.L. disclosed that she saw petitioner go into H.L.'s bedroom and threaten to strangle him, and that petitioner's brother had to forcibly remove petitioner from the situation. H.L. disclosed that petitioner was easily angered and "yells, screams and threatens" him. Further, H.L. reported that petitioner told the mother S.L. that he was going to abduct the children and that petitioner and S.L. fought a lot. S.L. obtained a restraining order against petitioner, but subsequently dismissed it. Based upon this information, the DHHR alleged that petitioner failed to provide a fit and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

suitable home for the children due to repeated incidents of domestic violence against and/or in the presence of the children.

The circuit court held an adjudicatory hearing in December of 2016, during which petitioner stipulated to the allegations contained in the petition. Specifically, petitioner stipulated that he failed to provide a fit and suitable home for the children due to repeated instances of domestic violence against and/or in the presence of the children. The circuit court accepted petitioner's stipulation and adjudicated him as an abusing parent.

In March of 2017, the circuit court held an initial dispositional hearing wherein petitioner was granted a post-adjudicatory improvement period. The circuit court ordered petitioner to (1) participate in parenting and adult life skills classes, (2) attend counseling sessions, (3) remain drug and alcohol free, (4) establish and maintain a fit and suitable home, and (5) have no contact with E.W.'s mother.

The DHHR moved to revoke petitioner's improvement period and terminate his parental rights in September of 2017. The DHHR alleged that petitioner refused to attend a drug screen because he was waiting on a friend to move his trailer. However, when the service provider arrived the next day to transport petitioner to a drug screen, he was not present and the trailer was still in the same location. Based upon this information, the DHHR argued that petitioner failed to comply with his drug screens and had not established a fit and suitable home for the children.

In October of 2017, the circuit court held a final dispositional hearing during which several witnesses testified as to petitioner's noncompliance with the terms of his improvement period. S.L. testified that she continued daily contact with petitioner despite having obtained a restraining order against him for threatening to kill her and having him arrested for burglary. A service provider testified that she appeared at petitioner's home to transport him for a drug screen but that he refused to go, stating that a friend was coming to move his trailer. The service provider testified that she returned the next day to transport him for a drug screen but that he was not home and the trailer had not been moved. A Child Protective Service ("CPS") worker testified that the DHHR recommended termination of petitioner's parental rights because he refused to provide a requested drug screen and failed to obtain or maintain suitable housing. The CPS worker testified that, during her visit to the home, she observed holes in the floors, missing paneling in the child's bedroom, missing flooring, and a broken window. She noted that, while petitioner was attempting to make repairs, the home was not suitable for the child.

Petitioner then testified that he had been unable to move his trailer and so he was renting a new home. He did note that there was a hole in the floor, missing light sockets, damage to a wall, and a broken window. Petitioner admitted that he continued daily contact with S.L. and was questioned regarding her prescriptions, but was found to be evasive in his answers. After hearing evidence, the circuit court found that petitioner was not truthful and failed to correct the conditions of abuse and neglect as he had not obtained suitable housing for E.W. and maintained contact with S.L. Accordingly, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect and that termination was in the

2

child's best interest. It is from the November 8, 2017, dispositional order terminating his parental rights that petitioner appeals.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights. Specifically, petitioner argues that he substantially complied with the terms and conditions of his improvement period by obtaining a suitable home, which he was in the process of repairing at the time of the dispositional hearing. Petitioner also argues that it was never alleged that he had a drug or alcohol problem and that he only missed one screen while he was attempting to move his trailer. Further, petitioner argues that he did not commit any acts of domestic violence throughout the proceedings below and was not instructed to disassociate from S.L. We find petitioner's argument unpersuasive. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

The record establishes that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. Petitioner was instructed to participate in drug screens and maintain suitable housing for his child. Petitioner refused to present for one drug screen, allegedly because he needed to move his trailer. However, testimony established that petitioner failed to move the trailer as alleged and did not appear for the rescheduled drug screen.

---

[2]The parental rights of E.W.'s mother were either voluntarily relinquished or involuntarily terminated in prior proceedings. The permanency plan for E.W. is guardianship by her paternal grandparents.

Contrary to petitioner's argument that he obtained suitable housing, the CPS worker testified that she observed a broken window, missing flooring, holes in the floor, and other issues with the home that made in uninhabitable for a child. Further, petitioner continued to associate with S.L. despite their history of domestic violence. During the proceedings below, petitioner was arrested for burglarizing S.L.'s house and reportedly threatened to kill S.L. with a knife. Accordingly, we disagree with petitioner's assertions that he complied with his improvement period sufficient to justify the return of his child. Moreover, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based on the evidence, we agree with the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Therefore, petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 8, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: May 14, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker